IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TABETHA FORESTER,                )
                                 )
            Plaintiff,           )   Civil No. 04-1458-JO
                                 )
       v.                        )   OPINION AND ORDER
                                 )
COMMISSIONER, SOCIAL SECURITY    )
ADMINISTRATION,                  )
                                 )
            Defendant.           )

Martin R. Cohen
4040 Douglas Way
P. O. Box 1229
Lake Oswego, OR  97035

  Attorney for Plaintiff

Neil J. Evans
Assistant United States Attorney, District of Oregon
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902

>    Franco L. Becia
>    Assistant Regional Counsel
>    Lucille G. Meis
>    SOCIAL SECURITY ADMINISTRATION
>    Office of the General Counsel
>    701 Fifth Avenue
>    Suite 2900, M/S 901
>    Seattle, WA  98104-7075
>
>      Attorneys for Defendant

JONES, Judge:

Plaintiff Tabetha Forester seeks judicial review of a final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) and supplemental security income (SSI) disability benefits. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Following a careful review of the record, I conclude that the Commissioner's decision is supported by substantial evidence, contains no errors of law, and is therefore affirmed.

## ADMINISTRATIVE HISTORY

Forester filed an application for DIB and SSI on June 21, 2002, alleging that she had been disabled since January 1, 2000, due to bipolar disorder, multiple personalities, and agoraphobia. Tr. 16.[1] After her application was denied initially and on reconsideration, Forester requested a hearing before an Administrative Law Judge (ALJ).

The ALJ held a hearing on December 3, 2003, which was continued in order to obtain further information regarding Forester's orthopedic complaints. A second hearing was held on May 27, 2004, at which the ALJ heard testimony from Forester, who was represented by an

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer (# 8) on February 14, 2005, are referred to throughout as "Tr."

attorney; a government medical expert, Larry Hart, Ph.D.; and a vocational expert, Richard Keough. On July 19, 2004, the ALJ issued a decision denying Forester's application for benefits. The July 19, 2004, decision by the ALJ became the final decision of the Commissioner when the Appeals Council denied Forester's request for review. Forester challenges that decision in the present action.

## STANDARD OF REVIEW

This court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). This court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).

## DISABILITY ANALYSIS

The Commissioner engages in a five-step sequential inquiry to determine whether a person is disabled within the meaning of the Social Security Act (SSA). 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

Step One: The Commissioner determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the Commissioner proceeds to Step Two.

3 - OPINION AND ORDER

Step Two: The Commissioner determines whether the claimant has a severe impairment. 20 C.F.R. § 416.920(c). If so, the Commissioner proceeds to Step Three. If not, the claimant is not disabled and the inquiry is finished.

Step Three: The Commissioner determines whether the claimant's impairment meets or equals one of the impairments listed in the SSA regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 416.920(d). If the claimant's impairment meets or equals one of the listed impairments, she is disabled. If not, the Commissioner proceeds to Step Four.

Step Four: The Commissioner determines whether the claimant is capable of performing her past relevant work. 20 C.F.R. § 416.920(e)-(f). If so, the claimant is not disabled. If not, the Commissioner proceeds to Step Five.

Step Five: The Commissioner determines whether the claimant has the residual functional capacity to perform any other work. 20 C.F.R. § 416.920(g). If the claimant is not able to perform other work, she is disabled. The Commissioner has the burden of showing that a claimant can perform jobs that exist in significant numbers in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). The Commissioner may meet this burden with the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2. If the Commissioner demonstrates that there are a significant number of jobs that the claimant can perform, then the claimant is not disabled. Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 416.920(g)(1).

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ employed the five-step inquiry to evaluate Forester's alleged disability. First, the ALJ determined that Forester worked at the level of substantial gainful activity until May

2001.  Tr. 17.  Any jobs she held after that date were considered by the ALJ to be unsuccessful work attempts due to their short duration.  Id.

Second, the ALJ found that the medical evidence demonstrated that Forester's affective disorder and personality disorder are severe impairments.  Tr. 18.  After summarizing the medical evidence, the ALJ noted that a report by an examining psychiatrist, Caleb Burns, Ph.D., suggesting that Forester had borderline intellectual functioning, could not be accepted because of the evidence of malingering and exaggeration of symptoms reported by Dr. Burns.  Id.  The ALJ also noted that Forester's treating psychiatrist, Fred Coler, M.D., had not found any evidence of intellectual defects.  Id.

The ALJ also found that Forester's obesity and history of ankle fracture were severe impairments.  Tr. 19.  Although Forester also alleged a knee impairment, *see* Tr. 390, the ALJ found no medical evidence in the record that she had been treated or diagnosed with a knee impairment.  Tr. 19.  In addition, the ALJ noted that she had never reported knee problems to a treating physician.  Id.

At the third step, the ALJ determined that the medical evidence showed that Forester's impairments, although severe, were not severe enough for a period of twelve months or more to meet or equal any of the impairments listed in the SSA regulations.  Id.; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The ALJ noted that Forester's obesity and ankle impairment do not meet the criteria of any listed impairment, and her other impairments did not rise to a level necessary to meet the B or C criteria of any listed impairment.  Tr. 19; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Fourth, the ALJ found that Forester had the "residual functional capacity to stand up to one hour in a work day and walk up to 30 minutes in a work day." Tr. 21. Other exertional limits included not being able to climb and only occasionally being able to kneel, crawl, and crouch. Id. Non-exertional limits included moderate limits in the ability to understand, remember, and carry out detailed instructions; the ability to work in coordination with or proximity to others; the ability to interact appropriately with the general public; the ability to get along with coworkers or peers; and the ability to respond appropriately to changes in a work setting. Id. In making these findings, the ALJ considered Forester's testimony to be not entirely credible when viewed in context with the record as a whole. Tr. 20.

In determining whether Forester could return to her past relevant work as a flagger, sandwich maker, cashier, or telephone solicitor, the ALJ considered testimony by the VE that Forester may be capable of returning to her past work as a telephone solicitor. However, the ALJ decided to give Forester the "benefit of the doubt," and found that, given the moderate limitations in her ability to interact with the public, the job of telephone solicitor would not be feasible. Therefore, the ALJ determined that Forester was not able to return to her past relevant work. Tr. 21.

At the fifth step, the ALJ made the determination that Forester was able to make "a successful adjustment to work that exists in significant numbers in the national economy." Tr. 22. According to the testimony of the VE, there are 100,000 microfiche document preparer jobs, 114,000 extruder machine operator jobs, and 1,500,000 small products assembly jobs in the national economy, any of which Forester could perform Id. In making the determination that Forester could perform one of these jobs, the ALJ considered the "credible testimony of the

vocational expert," Forester's age, educational background, work experience, and residual functional capacity. Id. Consequently, the ALJ found that Forester was not disabled as defined by the SSA, and denied her application for benefits. Tr. 22-23.

## DISCUSSION

Plaintiff Forester challenges the ALJ's findings on three grounds. (*See* Pl.'s Brief (titled Pl.'s Mem.) (# 12) at 26-35.) First, Forester asserts that the ALJ erred by rejecting her testimony at the hearing. Second, Forester claims that the ALJ erred by rejecting the opinion of Caleb Burns, Ph.D., *see* Tr. 259-76, an examining psychologist who evaluated Forester on August 6, 2002. Finally, Forester argues that the ALJ erred by posing an incomplete hypothetical to the VE. Specifically, Forester contends that the ALJ should have included Forester's subjective complaints in the hypothetical. I will address each argument in turn.

1. **The Credibility of Forester's Testimony**

Plaintiff asserts that the ALJ erred by failing to give clear and convincing reasons for determining that Forester's testimony was not entirely credible and therefore rejecting her testimony and subjective complaints.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). In making this determination, the ALJ may consider "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [claimant's] testimony and [claimant's] conduct, [claimant's] daily activities, [claimant's] work record, and testimony from physicians and third

7 - OPINION AND ORDER

parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ has a duty to make credibility determinations. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." Thomas, 278 F.3d at 959. When the evidence supports more than one rational interpretation, the reviewing court should defer to the decision of the ALJ. Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

In this case, the ALJ gave several reasons supporting his determination that Forester's testimony was not entirely credible. *See* Tr. 20. The ALJ found inconsistencies between Forester's testimony and the medical record. For example, although Forester testified that her ankles gave out on her after standing for 15 minutes, medical reports indicated no weakness in either ankle. In fact, the medical assessment notes: "I do not understand why this patient has the level of disability that she states." Tr. 373, 412.

Furthermore, in several places the record indicates that Forester may have been exaggerating her symptoms or malingering. Tr. 184, 200, 225, 272, 273. For example, one therapist noted that Forester "appears to be fabricating most of her symptoms." Tr. 200. A report by Dr. Caleb Burns states that Forester "may have been overstating her memory difficulties." Tr. 272. At a later point, that same report notes, "Tabetha was seen to be over-endorsing seldomly-endorsed psychiatric problems . . . ." Tr. 273.

At the hearing, the ALJ asked the medical expert, Dr. Larry Hart, to give an opinion, based on the record, as to whether Forester met the disability requirements. Tr. 417. Dr. Hart testified that he was unable to give an opinion based on the record because "it appears to be a

quality of the claimant's presentation which somewhat appears to be the distorting what she's reporting. Possibly malingering . . . ." Tr. 418.

"Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Further, as discussed above, the ALJ has the responsibility for making credibility determinations. Here, the ALJ gave specific reasons and examples as to why he found that Forester's testimony was not credible. Tr. 15-23. The ALJ noted that there was affirmative evidence of malingering by Forester in the record. Tr. 20.

Based on my review of the record, I conclude that the ALJ gave sufficient reasons for discounting portions of Forester's testimony. Therefore, I find that the ALJ's determination was based on substantial evidence and was free from legal error.

**2.   The ALJ's Rejection of Dr. Caleb Burns's Opinion**

In general, opinions of treating doctors are given greater weight than the opinions of examining doctors. Lester, 81 F.3d at 830. Likewise, the opinion of an examining doctor is entitled to greater weight than that of a non-examining doctor. Id. If the opinion of an examining doctor is not contradicted in the record, the ALJ must give clear and convincing reasons for rejecting the opinion. Id. Even if the opinion is contradicted in the record, the ALJ must still give "specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

Plaintiff contends that the ALJ erred by failing to give clear and convincing reasons for rejecting portions of the report by Dr. Caleb Burns, one of Forester's evaluating psychologists. Dr. Burns examined Forester on one occasion, August 6, 2002, for the purpose of providing a

comprehensive psychological evaluation. Tr. 259-76. Dr. Burns diagnosed plaintiff as having a schizoaffective disorder, an anxiety disorder, insomnia, and borderline intellectual functioning. Tr. 275. He also determined that Forester's medical status was largely non-contributory to her ability to function, and that there was a need to rule out some exaggeration of symptoms. Id. Finally, Dr. Burns's report noted that stressors for this plaintiff included financial limitations, limitations associated with chronic mental illness, miscarriage, and a history of early sexual molestation. Id.

However, at several points in the report, Dr. Burns implied that he questioned Forester's veracity by indicating that he would be interested in seeing any information that contradicted his findings. Tr. 260, 269, 270, 275. As noted previously, his report also found that two of the tests he administered were not valid due to Forester's possible symptom exaggeration. Tr. 272, 273.

The ALJ thoroughly discussed the medical evidence and concluded that because Dr. Burns's report was based primarily on Forester's own reports of symptoms, and because two of the tests were invalid due to Forester's exaggerations, Dr. Burns's conclusions should be accorded less weight. Tr. 18, 21. Furthermore, the ALJ noted that Forester's treating psychiatrist, Dr. Fred Coler, did not find any evidence of intellectual defects, and properly gave Dr. Coler's opinion greater weight on this issue. Tr. 18.

Even if the report by Dr. Burns was not contradicted by additional evidence in the record, the ALJ gave "clear and convincing" reasons for why he gave Dr. Burns's report less weight. An ALJ may reject a medical report if it is, among other things, premised on a claimant's discredited subjective complaints or by her daily activities. *See* Thomas, 278 F.3d at 957. In this case, the ALJ found that Dr. Burns's report was based primarily on Forester's self reports, which the ALJ

had already found not credible and contradicted by some of her daily activities. Tr. 19.
Furthermore, in the areas where Dr. Burns did give Forester objective tests, he found that at least some of the results from those tests were not reliable. Tr. 272, 273.

A reviewing court should defer to the ALJ's rational interpretation of conflicting evidence. *See* Batson, 359 F.3d at 1193. In this case, the ALJ thoroughly reviewed all of the evidence, considered all of the testimony at the hearing, and enumerated the reasons for his decisions. Based on my review of the record, I find that the ALJ gave legally sufficient reasons for rejecting portions of Dr. Burns's opinion, and that the ALJ's conclusions are based on substantial evidence.

**3.      The Hypothetical Presented to the Vocational Expert**

Finally, plaintiff contends that the ALJ did not submit a complete hypothetical to the VE. Specifically, plaintiff claims that the ALJ "ignored the conclusion of her [Forester's] own Dr. Rethinger that Ms. Forester has a marked impairment in her ability to interact appropriately with the general public." (Pl.'s Br. at 34.) Generally, the hypothetical posed to the VE must include all of a claimant's limitations. Light, 119 F.3d at 793 (quoting Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995)).

At the hearing, the ALJ gave the VE the following hypothetical:

> [ALJ]: I want you to assume a 27-year old individual, who has had the same past relevant work as this claimant. But who is limited in lifting up to 20 pounds occasionally, 10 pounds on a frequent basis. Can stand up to one hour out of eight hours in a workday. Can sit up to 30 -- I'm sorry, can walk up to 30 minutes in a [sic] eight hour workday. With those two interchangeable with sitting with no restrictions, so an option. This person also would be restricted in climbing of ladders, ropes. And should not work and have to walk on uneven surfaces. Would be limited in crawling, crouching, or kneeling to occasional. . . . Could that person who has the ability to remember locations and can remember work-like procedures, and will understand primarily short, simple instructions, but

11 - OPINION AND ORDER

would not have difficulty with suggestions for some detailed instructions and can carry them out. Could that person do any of the past relevant work of this claimant?

[VE]: The only thing that I could see that she could do from what she's performed in the past, would be the telephone solicitor position.

Tr. 422.

Plaintiff had the opportunity to object to the questions that the ALJ posed to the VE at the hearing, and her attorney questioned the VE about Forester's limitations in interacting with the general public. *See* Tr. 423-25. Although plaintiff contends that the ALJ did not consider her inability to interact appropriately with the public, the ALJ clearly did consider this in his decision. "Giving the claimant the benefit of the doubt, the undersigned [ALJ] finds she is not capable of this work [telephone solicitor] due to her moderate limitation in the ability to interact with the public." Tr. 21. Because of that determination, the ALJ found that Forester was not capable of performing any of her past relevant work, and therefore proceeded to step 5 of the disability analysis.

Plaintiff also contends that the ALJ did not consider her agoraphobia in the hypothetical to the VE. However, the evidence in the record of agoraphobia was based primarily on Forester's own reports. Forester's alleged agoraphobia appears to be linked to her anxiety and depression; when those conditions were addressed with medication, her feelings of not wanting to leave the house lessened as well. *See, e.g.*, Tr. 351. As discussed above, the record is full of inconsistent statements from Forester. Because of these statements, the ALJ found that her testimony lacked credibility. Specifically addressing Forester's allegations of agoraphobia, the ALJ noted that she went camping and taught art to the handicapped. Tr. 19. Because the ALJ

found that Forester's testimony was not credible, a limitation based on her allegations of agoraphobia was properly excluded.

The ALJ posed a proper hypothetical to the VE based upon a Residual Functional Capacity (RFC) finding that included all of plaintiff's credible limitations. Further, the ALJ gave the benefit of the doubt to Forester when considering her inability to interact with the public, ruling in Forester's favor that she was not able to perform any of her past relevant work. The record as a whole supports the ALJ's RFC finding. The ALJ's hypothetical accurately reflected this finding, and included each of Forester's limitations that was supported by substantial evidence. I find that the ALJ's RFC assessment and the hypothetical posed to the VE contained all of Forester's relevant and credible limitations. Therefore, the ALJ did not err when he intentionally omitted a limitation based on the alleged agoraphobia.

If the ALJ finds that a claimant cannot perform his or her past relevant work, the Commissioner has the burden of showing that the claimant can perform jobs that exist in significant numbers in the national economy. Tackett, 180 F.3d at 1100. In this case, the ALJ solicited this information from the VE, who found three types of jobs that Forester would be able to perform given her RFC. Tr. 22. The VE determined that there were 100,000 microfiche document preparer jobs, 114,000 extruder machine operator jobs, and 1,500,000 small products assembly jobs. Id. The ALJ properly determined that there were a significant number of jobs in the national economy that plaintiff could perform. Accordingly, the Commissioner met her burden at step 5 of the disability analysis. *See* 20 C.F.R. § 416.920(g).

## CONCLUSION

For the foregoing reasons, and based on my review of the record, the Commissioner's decision denying Forester disability insurance benefits and supplemental security income disability benefits is supported by substantial evidence in the record as a whole and is, therefore, AFFIRMED.

IT IS SO ORDERED.

DATED this 24th day of October, 2005.

                                                  /s/ Robert E. Jones
                                                ROBERT E. JONES
                                                U.S. District Judge